# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 8233 | **DATE** | 1/7/2005 |
| **CASE TITLE** | Northwest Bakery vs. George Weston Bakeries | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing is set for 1/26/05 at 9:30AM.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Plaintiff's motion for a preliminary injunction is hereby granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | JAN 1 1 2005 | |
| | Notified counsel by telephone. | | | date docketed | |
| x | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| RJ/TL | courtroom deputy's initials | | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHWEST BAKERY DISTRIBUTORS, INC., and MICHAEL MANSEAU, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) Honorable Joan B. Gottschall |
| v. | ) ) Case No. 04 C 8233 |
| GEORGE WESTON BAKERIES DISTRIBUTION, INC., et al., | ) ) ) |
| Defendants. | ) |

DOCKETED
JAN 1 1 2005

## MEMORANDUM OPINION AND ORDER

Plaintiff Northwest Bakery Distributors, Inc. and its sole shareholder, Michael Manseau ("Northwest" or plaintiff), have moved for a preliminary injunction to enjoin the termination of Northwest's bakery distribution agreement with defendant George Weston Bakeries Distribution, Inc., et al. ("Weston" or defendant) pending trial on the merits. For the reasons that follow, the preliminary injunction is granted.

On December 16, 2004, defendant gave plaintiff notice of the termination of the parties' distribution agreement citing two bases for termination. First, defendant stated that "On December 16, 2004, your employee [referring to an independent contractor named Charles Suarez whom Northwest had hired to assist it in stocking stores with defendant's bread products] admitted to stealing merchandise from Jewel #333. This action constitute[s] a non-curable breach of your Distribution Agreement with [Weston] . . ." Further, the letter stated that "by letters dated July 8 and December 3, 2004, [Weston] notified you of prior violations of your Distribution Agreement. Your repeated violations, including the breach identified above, constitute a chronic breach of your Distribution Agreement and threaten significant harm to [Weston], its trademarks, business and commercial reputation."

The first asserted basis for termination relies on Article 9, ¶9.2 of the parties' agreement,

1

titled "Non-Curable Breach." That provision states:

> In the event that the failure of performance by DISTRIBUTOR involves the commission of any act of dishonesty or violation of any law relating to this agreement which affects or could affect Distributor's ability to perform under this Agreement. [Weston] may terminate this Agreement upon twenty-four (24) hours written notice and DISTRIBUTOR shall have no right to cure.

The facts underlying this asserted ground for termination were that on December 16, 2004, Suarez, who worked for Northwest stacking bakery products on supermarket shelves, stole two DVD's from a Jewel store #333, where he was working on behalf of Northwest. As a result of Suarez's theft, Jewel store #333 banned Northwest from delivering product to its premises.

The other asserted basis for termination was that Weston had sent Northwest two "breach" letters, one on July 8, 2004, and one on December 3, 2004, giving Northwest notice that two stores had complained to Weston that Northwest "had failed to provide proper and satisfactory service" in that on June 30 and July 1, 2004, Meijer store #228 in Rolling Meadows, Illinois ran out of stock of Weston's product, Brownberry Wide Pan breads which were on a promotion at that store, and that on November 27, 2004, Jewel store #45 reported that 14 Brownberry items were out of stock. At the hearing on the preliminary injunction, Weston provided testimony that Jewel store #45 also complained that on November 23, 2004, the day before Thanksgiving, it ran out of stuffing; Northwest was able to deliver extra stuffing to the store in response to the complaint.

In order to be entitled to a preliminary injunction, plaintiff must show that it has some likelihood of success on the merits and that it will be irreparably injured if a preliminary injunction is not granted. If it does so, the court must consider the balance of harms to both parties and the public interest in granting or denying an injunction.

With respect to likelihood of success on the merits, plaintiff has carried its burden. It is reasonably likely that plaintiff will be able to establish that a shoplifting incident by an independent contractor, whom plaintiff immediately fired on learning of the incident, is not an act of dishonesty

2

which affects or could affect plaintiff's ability to perform within the meaning of the contract. First, it is clear that the incident involved did not affect plaintiff's ability to perform. Plaintiff's ability to perform was impaired only to the extent that Jewel store #333 banned plaintiff from servicing its store, a situation plaintiff quickly addressed by switching routes with another distributor, a common practice in the industry. Second, the contractual provision at issue provides that the act of dishonesty to which it is address is a non-curable breach, requiring a termination of distribution rights which in this case represent over ten years of development effort by plaintiff and which are valued at close to $250,000. To read this provision to require a complete forfeiture of such property rights based on conduct for which plaintiff, as far as the court can tell from the evidence presented so far, had no ability to prevent or control, and which plaintiff was able to remedy in short order, is simply unreasonable. If defendant wished to have the right to terminate a distributor for any isolated act of theft by a low level employee, its contract should have included a provision that its distributors would be held responsible, and would lose their contract rights, based on any act of dishonesty by hired laborers. The agreement does not contain such a provision. Rather, Section 9.2 provides a certain amount of protection to the distributor, addressing only acts of dishonesty severe enough to undermine the parties' contractual relationship, not isolated, random and uncontrollable incidents for which third party, and not the distributor, was responsible, and which can be easily cured by discharging the third party, as was done here.

The case is somewhat closer with respect to the alleged chronic failures of service by plaintiff. This justification for termination rests on ¶9.3 of the distribution agreement, titled "Curable Breach." This provision states:

> In the event of failure of performance by DISTRIBUTOR other than as described in 9.2, [Weston] shall give DISTRIBUTOR five (5) business days written notice within which DISTRIBUTOR may cure his failure of performance. If DISTRIBUTOR fails to take reasonable steps to cure such failure of performance within said five (5) day period, [Weston] may thereafter terminate this Agreement and DISTRIBUTOR shall have no further right to cure; provided, further,

3

> that the parties agree that repeated failures of performance constitute a chronic failure of performance and threaten substantial harm to [Weston's] business, and in such event [Weston] shall be entitled to terminate this Agreement without further notice and DISTRIBUTOR shall have no further right to cure.

The issue here is whether plaintiff will succeed in showing that he was not guilty of a "chronic failure of performance" and no cause for termination arose. The problem with the resolution of this issue is that given the urgency with which the parties pressed for this hearing, there was little evidence presented from which the court could determine whether plaintiff's "out of stock" incidents can reasonably be viewed as "chronic" failures. There was evidence that the kind of "out of stock" incidents cited by defendant in its termination letter are not uncommon; indeed, Joe Schuch, defendant's Distributor Liaison for the Midwest Region, testified that in the year he has held his current position overseeing 550 distributors, Weston has sent "breach" letters such as the letters of July 8 and December 3 to his distributors approximately 50 to 100 times, and that figure excludes all the "out of stock" incidents as to which Weston's investigation disclosed the presence of extenuating circumstances. Plaintiff presented evidence from two other Illinois distributors for Weston, albeit by affidavit, that "[o]ut of stock situations are commonplace in the baked goods retail industry and it is not unusual for a distributor to be out of stock for one particular product at a certain store once or twice per month." (Flader Affidavit, ¶8; Kressner Affidavit, ¶8.) Moreover, the affidavits submitted by plaintiff corroborated plaintiff's testimony that there are substantial limitations to a distributor's ability to prevent "out of stock" situations, and that the distributor's failure properly to assess the amount of product with which to stock a retail store is only one of a number of possible causes, most of which are beyond the distributor's control, such as the shelf space limitations set by the retailer and the retailer's willingness to allow the distributor to leave extra product in a stock room or other facility; the amount of product the bakery had available for its distributors; and the conduct of suppliers of competitive goods. For instance, a distributor could properly estimate the amount of Brownberry bread to leave on a Jewel store's shelf based on

4

historical demand for that product but if a distributor for a competitive brand underestimated demand, the lack of the competitive bread could cause excess demand for Brownberry that the Brownberry distributor could not have anticipated.

Because Weston sent two "breach" letters to plaintiff in the course of the last year, Weston would like the court to find that plaintiff's failures were unmitigated by extenuating circumstances since, it was suggested by Weston's testimony, breach letters are sent only when Weston's investigation shows the absence of extenuating circumstances. Recognizing that out-of-stock incidents may be beyond the distributor's control, defendant asserts that if the retail stores involved allocated inadequate shelf space for Weston's products around the Fourth of July and Thanksgiving holidays when plaintiff's out-of-stock incidents occurred, plaintiff should have arranged to leave extra product in the stock room, or negotiate additional shelf space. The evidence indicated, however, that stores are sometimes not willing to provide stock room or extra display space. Further, while Schuch testified that an investigation of these incidents would have been conducted, defendant was unable to provide any evidence as to what its investigation revealed, if anything. With evidence that out-of-stock incidents are frequently due to factors over which a distributor has no control and no evidence indicating why Weston concluded that plaintiff's failures were "chronic," it is clear that plaintiff may be able to succeed in showing that grounds for termination on the basis of chronic failure do not exist.

With respect to the issue of irreparable injury, the court is satisfied that plaintiff has adequately shown that he will be severely and irreparably injured if his distribution rights are terminated. Plaintiff's Weston distributorship is his sole source of livelihood, and he has been developing the relationships with his retail customers on which his success depends for over ten years. During that period, plaintiff has obviously added value to his distributorship (or circumstances have) so that a distributorship for which he paid $84,600 in 1993 is now valued at close to $250,000. The evidence presented at the hearing made plain that a distributor of a product

5

such as Brownberry bread must develop substantial expertise in terms of his retail customers' demand for his product if he is going to be successful. Moreover, success in plaintiff's business requires the development of good relationships with retail store personnel as well as with other local distributors, since the evidence suggests that distributors rely on each other to assist and cover for them in many circumstances. Were plaintiff to lose his distributorship, even temporarily, he would lose the value of the relationships he has developed during his more than ten years on the job. If the evidence at trial indicates that Weston did not have proper grounds for terminating plaintiff and Weston or another distributor has been supplying plaintiff's route during the pendency of this case, plaintiff's loss of goodwill, key relationships and current experience and know-how will not easily be repaired and will certainly not be readily compensable in damages.

On the other side of the equation, the court is persuaded that the harm to Weston if plaintiff's termination is enjoined is minimal at best. If Weston is permitted to terminate plaintiff during the pendency of this case, it plans to cover plaintiff's route itself, thus taking on a substantial burden. Weston provided some evidence that, at least at the time of the specific instances recounted in its letters to plaintiff (the out-of-stocks and the DVD theft from Jewel store #333), the store managers involved at those stores said negative things about plaintiff, and in the case of Jewel store #333, barred plaintiff from servicing the store. However, Jewel store #333 is now being serviced by another distributor by agreement with plaintiff, and the court had only fragments of recollected hearsay as to the displeasure of the store managers involved in the out-of-stock incidents. While Schuch testified that Weston's goodwill in the retail community could be damaged by future misconduct of plaintiff, the evidence of this was meager and unsatisfactory. In fact, Schuch testified that he has had no complaints regarding plaintiff's service to customers during the period of the TRO and admits that, if plaintiff continues to provide the current level of service, Weston will not suffer any harm by plaintiff's continued service of his route. The harm to plaintiff if an injunction is improperly denied far exceeds any potential harm to defendant if an injunction is erroneously

6

granted.

In order, however, to make sure that Weston's interests are not impaired during the pendency of this case, the court will be available to hear evidence of problems that develop, including difficulties specific store managers have with plaintiff, if Weston wishes to produce it. Should there be some difficulty with some specific store, the court can require that the store be serviced by another distributor or by Weston itself, such as is occurring in the case of Jewel store #333.

The court finds no public interest implicated in the issue of whether preliminary injunctive relief should be granted or denied.

Because plaintiff has shown a likelihood of success on the merits and irreparable injury, and because the balance of hardships decidedly favors plaintiff, plaintiff's motion for a preliminary injunction is granted.[1]

ENTER ORDER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: January 6, 2005

---

[1] Shortly after the court finished drafting this opinion, defendants sent a letter to the court stating that one of the stores on plaintiff's route ran out of stock on several of defendants' products on January 4, 2005 (the day that plaintiff was called to testify at the preliminary injunction hearing). Defendants argue in their letter that this constitutes an additional material breach of the distributor agreement. While the additional out of stock event is cause for concern, it does not change the fact that defendants have failed to provide the court with the information necessary to satisfy the court whether plaintiff's service failures have been "chronic" within the meaning of the distributor agreement. Moreover, defendants' letter is not an appropriate method for bringing additional evidence to the court's attention. In the future, if defendants wish to supplement a brief or have additional concerns regarding plaintiff's performance, they must file a motion with the court so the court can arrange for both sides to be heard on the issues.